**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DAVID DALTON, YOVANI BROADUS, and
DIORI JOHNSON, individually and on behalf all
others similarly situated,

Plaintiffs,

v.

GEM FINANCIAL SERVICES, INC.; GEM
PAWNBROKERS OF NY INC.; GEM
PAWNBROKERS LONG ISLAND, CORP; GEM
OF MOUNT VERNON, INC.; GEM OF
MELVILLE, INC.; GEM OF MERRICK, INC.;
GEM OF HICKSVILLE, LLC; GEM OF VALLEY
STREAM, LLC; and 608-8TH AVE CORP.

Defendants.

Civil Action No. 1:15-cv-05636

**CLASS AND COLLECTIVE ACTION
COMPLAINT FOR DAMAGES,
RESTITUTION AND INJUNCTIVE
RELIEF**

**JURY TRIAL DEMAND**

Plaintiffs David Dalton, Yovani Broadus, and Diori Johnson (collectively "Plaintiffs"),

by their attorneys, The Ottinger Firm, P.C., allege, upon personal knowledge and upon

information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

1.      This is a case about GEM Financial Services, Inc. ("GEM"), a company that

operates as a pawnbroker throughout New York City and the wider New York metro area

through various subsidiaries, aliases and companies under common ownership and control, and

which maintains a policy and practice of systematically underreporting the hours worked by its

non-exempt employees who were paid on an hourly basis, thus, unlawfully failing to provide

compensation for all hours worked. This systematic policy and practice applies not only to the

Company's direct employees, but also to the hourly, non-exempt employees of the Company's

subsidiaries and other companies under common ownership and control, including GEM

Pawnbrokers of NY Inc.; GEM Pawnbrokers Long Island Corp.; GEM of Mount Vernon, Inc.;

GEM of Melville, Inc.; GEM of Merrick, Inc.; GEM of Hicksville, LLC; GEM of Valley Stream, LLC; and 608-8th Ave Corp. (collectively with Defendant GEM Financial Service, Inc., "Defendants," or the "Company").   Defendants collectively employ in excess of about 150 non-exempt hourly workers, all of whom are subject to Defendants' common policy and practice of systematically under-reporting overtime hours.

2.     Plaintiffs David Dalton, Yovani Broadus, and Diori Johnson (collectively, "Plaintiffs") bring this action on their own behalf and behalf of all non-exempt employees who are paid on an hourly basis who worked at GEM or any company under GEM's common ownership and control during the six years prior to the filing of this action. As a result of Defendants common' policy, pattern and practice of underreporting the hours worked by Plaintiffs and the proposed class members, Plaintiffs and the proposed class members were denied payment of wages for all hours worked and overtime premium compensation for all hours worked in excess of forty (40) in a given workweek.

3.     Plaintiffs are similarly-situated under Rule 23 of the Federal Rules of Civil Procedure and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) because they were all subject to the same policy of underreporting the hours that they actually worked for Defendants,

4.     Plaintiffs seek relief individually and on behalf of all similarly-situated employees pursuant to the applicable provisions of the New York Labor Law ("NYLL") and the FLSA to remedy Defendant's failure to pay all overtime and injunctive relief.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as this action is brought under the FLSA pursuant to 29 U.S.C. §§ 207 *et seq.*

2.     This Court has supplemental jurisdiction over Plaintiffs' related claims arising under State law pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial portion of the wage violations that give rise to the claims of Plaintiffs and the class occurred in this District.

4.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Defendants each maintain a principal place of business in New York State and are each subject to personal jurisdiction in New York.

## PARTIES

5.      Individual and representative Plaintiff David Dalton resides in Brooklyn, New York.  He was employed by Defendant as an Administrative and Executive Assistant in the Brooklyn offices of Defendant GEM Financial Services Brooklyn from approximately March 2014 until September 15, 2015. At all relevant times, Plaintiff Dalton met the definition of an "employee" under all applicable statutes.

6.      Individual and representative Plaintiff Yovani Broadus resides in Brooklyn, New York.  She was employed by Defendant as a Marketing Manager at GEM's Brooklyn location from March 2013 until May 2015.  At all relevant times, Plaintiff Broadus met the definition of an "employee" under all applicable statutes.

7.      Individual and representative Plaintiff Diori Johnson resides in Brooklyn, New York.  She was employed by Defendant as a Staff Accountant at GEM's Brooklyn location from November 4, 2013 until August 7, 2015. At all relevant times, Plaintiff Johnson met the definition of an "employee" under all applicable statutes.

8.      Defendant GEM Financial Services, Inc. is a corporation existing under the laws of the state of New York. Its principal executive offices are located at 378 Schermerhorn Street, Brooklyn, NY 11217.  GEM's line of business includes the retail sale of used merchandise,

3

antiques, and secondhand goods. At all relevant times, GEM met the definition of "employer" under all applicable statutes.

9.      Defendant GEM Pawnbrokers of NY Inc. is a corporation existing under the laws of the state of New York. Its principal executive offices are located at 378 Schermerhorn Street, Brooklyn, NY 11217.  GEM Pawnbrokers of NY Inc.'s line of business includes the retail sale of used merchandise, antiques, and secondhand goods. At all relevant times, GEM Pawnbrokers of NY Inc.  met the definition of "employer" under all applicable statutes.

10.     Defendant GEM Pawnbrokers Long Island Corp. is a corporation existing under the laws of the state of New York. Its principal executive offices are located at 378 Schermerhorn Street, Brooklyn, NY 11217.  GEM Pawnbrokers Long Island Corp.'s line of business includes the retail sale of used merchandise, antiques, and secondhand goods. At all relevant times, GEM Pawn Brokers Long Island Corp. met the definition of "employer" under all applicable statutes.

11.     Defendant GEM of Mount Vernon, Inc. is a corporation organized and existing under the laws of the State of New York.  Defendant GEM of Mount Vernon, Inc. is a wholly-owned subsidiary of GEM Financial Services and is located at 378 Schermerhorn Street, Brooklyn, NY 11217. At all relevant times, Defendant GEM of Mount Vernon, Inc. was a covered employer within the meaning of the FLSA and NYLL.

12.     Defendant GEM of Melville, Inc. is a corporation organized and existing under the laws of the State of New York.  Defendant GEM of Melville, Inc. is a wholly-owned subsidiary of GEM Financial Services and is located at 708 Walt Whitman Rd., Melville, NY 11747. At all relevant times, Defendant GEM of Melville, Inc. was a covered employer within the meaning of the FLSA and NYLL.

4

13.     Defendant GEM of Merrick, Inc. is a corporation organized and existing under the laws of the State of New York.  Defendant GEM of Merrick, Inc. is a wholly-owned subsidiary of GEM Financial Services and is located at 229 Sunrise HWY, Merrick, NY 11566. At all relevant times, Defendant GEM of Melville, Inc. was a covered employer within the meaning of the FLSA and NYLL.

14.     Defendant GEM of Hicksville, LLC is a limited liability corporation organized and existing under the laws of the State of New York.  Defendant GEM of Hicksville, LLC. is a wholly-owned subsidiary of GEM Financial Services and is located at 43 W. John Street, Hicksville, NY 11801. At all relevant times, Defendant GEM of Hicksville, LLC. was a covered employer within the meaning of the FLSA and NYLL.

15.     Defendant GEM of Valley Stream, LLC is a limited liability corporation organized and existing under the laws of the State of New York. Defendant GEM of Valley Stream, LLC. is a wholly-owned subsidiary of GEM Financial Services and is located at 126 Sunrise Hwy, Valley Stream, NY 11581. At all relevant times, Defendant GEM of Valley Stream, LLC was a covered employer within the meaning of the FLSA and NYLL.

16.     Defendant 608- 8th Ave Corp. is a limited liability corporation organized and existing under the laws of the State of New York.  Defendant 608-8th Ave Corp. is a wholly-owned subsidiary of GEM Financial Services and is located at 608-8th Ave, Suite 1, New York, New York 10018. At all relevant times, Defendant 608-8th Ave. Corp. was a covered employer within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

### Defendants are a Single Enterprise Engaged in Commerce

17.     Defendants comprise a single enterprise engaged in commerce in that they have employees engaged in commerce and/or handling, selling or otherwise working on goods or

materials that have been moved in or produced for commerce by any person and their annual sales exceed $500,000.00.

18.     Defendants are engaged in related activities (through both a unified operation and the common control of Defendant GEM) for a common business purpose, namely the operation of pawn shops in New York, Bronx, Kings, Queens, Suffolk, Nassau, and Westchester Counties in the State of New York.

19.     Defendants are engaged in related activities, i.e. all activities which are necessary to the operation and maintenance of pawn shops within the New York metropolitan area.

20.     Defendants constitute a unified operation as they have organized the performance of their related activities so that they are an organized business system which is an economic unit directed to the accomplishment of a common business purpose.

21.     Defendants are all under the common control of Defendant GEM as Defendant GEM directs, governs and/or administers the performance of Defendants' operations and the maintenance of GEM pawn shops throughout the New York metropolitan area.

22.     By way of example only, Defendant GEM maintains common payroll systems, human resources, and executive management for each of the Defendants from its headquarters located at 378 Schermerhorn Street, Brooklyn, NY 11217.

23.     Defendant GEM moreover applies the same employment policies, practices and procedures to all hourly employees at its various locations, including policies, practices and procedures regarding the payment of minimum wage and overtime compensation.

**Plaintiff David Dalton**

24.     David Dalton was employed by Defendants at Defendant GEM's Brooklyn location as an hourly, non-exempt Administrative and Executive Assistant.

6

25.     Mr. Dalton was employed by Defendants from approximately March 2014 to September 15, 2015.

26.     Mr. Dalton was compensated on an hourly basis. Mr. Dalton was required to submit a timesheet each week to his manager indicating the number of hours worked each day.

27.     Mr. Dalton was regularly required to work more than 40 hours in a given week in connection with his responsibilities.

28.     On or around April 2014, after he had worked over 40 hours for several weeks, Mr. Dalton noticed that he had not been compensated for any hours he worked over forty.

29.     By way of example only, during the week of April 28 through May 4, 2014, Mr. Dalton submitted a timesheet that indicated his hours worked as follows:

| | |
|---|---|
| Monday: | 9:00 AM to 5:30 PM |
| Tuesday: | 9:00 AM to 5:15 PM |
| Wednesday: | 9:00 AM to 5:00 PM |
| Thursday: | 9:00 AM to 5:30 PM |
| Friday: | 9:00 AM to 5:15 PM |

30.     Thus, despite having worked 41.5 hours, Mr. Dalton was only compensated for 40 hours. This week was typical of Mr. Dalton's work schedule and compensation, and during many weeks Mr. Dalton worked significantly in excess of 40 hours without compensation.

31.     In or around April 2014, upon discovering that he was not being compensated for all hours worked, Mr. Dalton complained to representatives in the Company's Human Resources and Accounting Departments.

32.     Mr. Dalton was informed in response to his complaints that GEM does not pay employees wages for hours worked over 40 during the workweek; instead the Company only pays overtime for hours worked during the weekend.

33.     Mr. Dalton was also informed that GEM does not pay overtime even for hours worked on weekends absent written approval by a director supervisor, despite the fact that Mr. Dalton was required to work overtime by executives other than his direct supervisor and despite the fact that the Company was aware that Mr. Dalton did in fact work overtime, often on weekends.

34.     Through conversations with colleagues, Mr. Dalton learned that all other hourly employees were subject to the Company's unlawful policy and practice of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek, as described to Mr. Dalton.

35.     Mr. Dalton was subject to the Company's unlawful compensation policy and practice of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek, throughout his employment at the Company.

**Plaintiff Yovani Broadus**

36.     Yovani Broadus was employed by Defendants at Defendant GEM's Brooklyn location as a hourly, non-exempt Marketing Manager.

37.     Ms. Broadus was employed by Defendants from approximately March 2013 to approximately May 2015.

38.     Ms. Broadus was compensated on an hourly basis from the outset of her employment until approximately January 2015, when she was misclassified as exempt from the overtime requirements of the FLSA and NYLL.

39.     Ms. Broadus was required to submit a timesheet each week to her manager indicating the number of hours worked each day.

40.     Ms. Broadus was regularly required to work more than 40 hours in a given week in connection with her responsibilities.

41.     From the outset of her employment, Ms. Broadus realized she was not being compensated for all hours worked and was not receiving an overtime premium for hours worked above 40 in a workweek.

42.     Upon information and belief, and by way of example only, on a typical week, Ms. Broadus's schedule was as follows:

| | |
|---|---|
| Monday: | 8:30 AM to 4:45 PM |
| Tuesday: | 8:40 AM to 4:45 PM |
| Wednesday: | 8:00 AM to 4:45 PM |
| Thursday: | 8:25 AM to 4:45 PM |
| Friday: | 8:00 AM to 4:45 PM |

43.     Despite thus regularly working at least 42 hours, Ms. Broadus was only compensated for 40 hours unless she worked over a weekend. Such a week was typical of Ms. Broadus's work schedule and compensation, and during many weeks Ms. Broadus worked significantly in excess of 40 hours without compensation.

44.     In or around April 2013, upon discovering that she was not being compensated for all hours worked, Ms. Broadus spoke with her supervisor about the Company's failure to compensate her for all hours worked, and was informed that the Company does not pay overtime.

45.     Ms. Broadus complained regularly throughout the course of her employment about the Company's unlawful compensation practices. In response, her manager informed her that, although the Company did not pay overtime, her "*hard work would be noticed and would pay off eventually.*"

9

46.     Through conversations with colleagues, Ms. Broadus learned that all other hourly employees were subject to the Company's unlawful policy and practice of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek.

47.     Ms. Broadus was subject to the Company's unlawful policy and practice of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek from the outset of her employment until on or around January 2015.

48.     On or about January 2015, Ms. Broadus was informed by a representative of ADP, the Company's payroll company, that her responsibilities in fact made her exempt from the overtime requirements of the FLSA and NYLL as a "Computer Specialist."

49.     However, despite being thus purportedly classified as an exempt "Computer Specialist" as of approximately January 2015, Ms. Broadus was not paid an hourly rate of $27.63, as required by the FLSA. Ms. Broadus was instead compensated at an hourly rate of $17.50.

50.     In or around January 2015, Ms. Broadus complained to Ms. Rachel Willen, the Company's President and Chief Operating Officer, that, based on her hourly wage, the Company had misclassified her as an exempt "Computer Specialist." Ms. Willen, however, refused to raise Ms. Broadus's hourly wage or to properly classify her as a non-exempt employee.

51.     Despite the Company's failure to abide by the FLSA's statutory and regulatory requirements for claiming the Computer Specialist exemption, Ms. Broadus received no overtime whatsoever from approximately January 2015 until the end of her employment.

**Plaintiff Diori Johnson**

10

52.     Diori Johnson was employed by Defendants at Defendant GEM's Brooklyn location as a hourly, non-exempt staff Accountant.

53.     Ms. Johnson was employed by Defendants from approximately November 4, 2013 to August 7, 2015.

54.     Ms. Johnson was compensated on an hourly basis. She was required to submit a timesheet each week to her manager indicating the number of hours she worked each day. Occasionally, Ms. Johnson was required to input her information directly into the Company's payroll system.

55.     Ms. Johnson was regularly required to work more than 40 hours in a given week in connection with her responsibilities.

56.     By way of example only, during the week of January 26 to February 1, 2014, Ms. Johnson's schedule was approximately as follows:

| | |
|---|---|
| Monday: | 9:00 AM to 5:15 PM |
| Tuesday: | 9:00 AM to 5:45 PM |
| Wednesday: | 9:00 AM to 5:15 PM |
| Thursday: | 9:00 AM to 5:15 PM |
| Friday: | 9:00 AM to 5:15 PM |

57.     Despite having worked 41.75 hours, Ms. Johnson was only compensated for 40 hours. This week was typical of Ms. Johnson's work schedule and compensation, and during many weeks Ms. Johnson worked significantly in excess of 40 hours without compensation.

58.     As part of her responsibilities, Ms. Johnson was required to process the payroll information of employees of each Defendant, all of whom were commonly owned and controlled by Defendant GEM Financial Services.

11

59.     At the outset of Ms. Johnson's employment, she was trained in payroll processing by the Company's chief bookkeeper Jahaida Tapia.

60.     During that training, Ms. Tapia informed Ms. Johnson that employees of each of the Defendants must not be paid for more than 40 hours, despite the number of hours they reported working. Ms. Tapia indicated that the Company had always maintained this practice.

61.     Ms. Johnson was also on various occasions instructed and required by the Company's Chief Financial Officer, Taunya D. Brown, not to process the hours of employees with whom Company executives were having "*issues*," and therefore to withhold the lawful compensation of those employees as a punitive measure.

62.     Ms. Johnson was furthermore required to falsify time records for the daughter of the Company's CFO to compensate her for hours she did not work and to falsify records of the personal expenses of various executives paid for by the Company.

63.     Ms. Johnson was herself subject to the Company's unlawful policy and practice of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

64.     At Plaintiffs bring this action on behalf of themselves and other employees similarly-situated as authorized under 29 U.S.C. § 216(b).  The employees similarly-situated are:

**FLSA CLASS:**      All non-exempt employees paid on an hourly basis who worked at any of the locations owned and/or operated by Defendants, or who were otherwise employed by any Defendant, within the three years prior to this action's filing date through the date of the final disposition of this action.

65.     Defendants employed Plaintiffs Dalton, Broadus and Johnson during the FLSA Class Period.

66.   During the FLSA Class Period, Defendants employed more than 150 employees who fall within the FLSA Class.

67.   By way of example only, Defendants controlled how much the FLSA Class members are paid, maintained all time records for the FLSA Class members, assigned and supervised all of the tasks given to the FLSA Class members, and maintained and exercised control as to how the FLSA Class members are to perform their tasks.

68.   As a result, all of the FLSA Class members are "employees" entitled to be compensated for all hours worked and entitled to overtime compensation for all hours worked in excess of 40 hours per workweek.

69.   During the FLSA Class period, Defendants authorized and/or maintained a common policy and practice of refusing to compensate hourly, non-exempt employees of all compensable hours, including all hours worked beyond forty (40) hours per workweek.

70.   Specifically, Plaintiffs were each informed that GEM does not pay compensation for hours worked over 40 during the week and only approve compensation for hours worked over a weekend with written approval of a direct supervisor, regardless of the manager who required the employee to work overtime.

71.   Plaintiff Johnson, in her capacity as staff accountant at the Company's Brooklyn headquarters, was furthermore directly aware of the Defendants' failure to pay compensation for overtime hours to employees at each of the companies under their common ownership or control.

72.   Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs Dalton, Broadus, Johnson, and the FLSA Class.

73.   Defendants are liable under the FLSA for failing to properly compensate Plaintiffs Dalton, Broadus, Johnson, and the FLSA Class, and as such, notice should be sent to the FLSA Class.  There are numerous similarly situated current and former employees of Defendants who

were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.  Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

**New York Class:**     All non-exempt employees paid on an hourly basis who worked at any of the locations owned and/or operated by Defendants, or who were otherwise employed by any Defendant, within the six years prior to this action's filing date through the date of the final disposition of this action.

75.     At all times during the New York Class Period, Defendants, as a matter of policy, did not pay Plaintiffs Dalton, Broadus and Johnson, or the New York Class members, compensation or overtime premium pay for all hours worked in excess of 40 hours per workweek.

76.     The facts as alleged in Paragraphs 66-75 regarding the FLSA Class Period are similarly true for the New York Class Period.

77.     Defendants' practices of failing to compensate Plaintiffs Dalton, Broadus and Johnson and the members of the New York Class for all hours worked and/or failing to pay overtime compensation for any hours worked in excess of 40 in a given workweek were and are in violation of the NYLL.

78.     Defendants failed to make, keep and/or preserve accurate records with respect to Plaintiffs Dalton, Broadus and Johnson and the New York Class in violation of the NYLL and supporting New York State Department of Labor regulations.

79.     Numerosity:    The proposed New York Class is so numerous that joinder of all members is impracticable. During the relevant time period, Defendants employed over 150 persons who satisfy the definition of the proposed New York Class.

80.     Typicality:      Plaintiffs Dalton, Broadus and Johnson claims are typical of the members of the Proposed New York Class.  During the New York Class Period Defendants' hourly, non-exempt employees were subject to Defendants' policy and practice of unlawfully depriving class members of wages for all hours worked and/or overtime premium compensation for all hours worked in excess of 40 hours per workweek.

81.     Superiority:    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

82.     Adequacy:      Plaintiffs Dalton, Broadus and Johnson will fairly and adequately protect the interests of the proposed New York Class, and have retained counsel experienced in complex FLSA and New York class and collective action litigation.

83.     Commonality:  Common questions of law, fact and damages exist to all members of the proposed New York Class and predominate over any questions solely affecting individual members of the proposed New York Class I, including but not limited to:

a.     whether Defendants violated the NYLL as alleged herein;

b.     whether Defendants unlawfully failed to compensate members of the New York Class for all hours worked in violation of the NYLL;

c.     whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the New York Class in violation of NYLL;

d.     whether Defendants' violation of the NYLL was part of a common policy followed by all Defendants;

e.     whether Defendants employed Plaintiffs Dalton, Broadus and Johnson and the New York Class within the meaning of New York law;

f.     whether Defendants should be enjoined from continuing the practices that violate the NYLL;

g.     what the proper measure of damages sustained by the New York Class are; and

h.     whether Defendants' actions were "willful."

84.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

85.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class I predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendants' common and uniform policies and practices denied the New York Class I the wages to which they are entitled. The damages suffered by the New York Class I members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

86.     Plaintiffs intend to send notice to all members of the New York Class I to the extent required by Rule 23.  The names and addresses of the New York Class I are available from Defendants.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Unlawful Failure to Pay Wages under the Fair Labor Standards Act)

87.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

88.     At all relevant times, Plaintiffs were employees and Defendants were their joint and/or single employers within the meaning of the FLSA.

89.     As outlined above, Defendants' practices violated the provisions of the FLSA regarding payment of wages to employees for all hours worked.

90.     Accordingly, Plaintiffs and the members of the FLSA Classes are entitled to compensation for each hour worked and overtime compensation for each hour worked in excess of forty (40) in a given workweek.

91.     Despite the hours worked by Plaintiffs and the FLSA Class members, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and/or refused to pay them proper compensation for all hours worked.

92.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

93.     Plaintiffs, on behalf of themselves and the FLSA Classes, seek recovery of their attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Unlawful Failure to Pay Wages under the New York Labor Law)**

94.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

95.     At all relevant times, Plaintiffs were employees and Defendants were their joint and/or single employers within the meaning of the NYLL.

96.     As outlined above, Defendants' practices violated the provisions of the NYLL regarding payment of wages to employees for all hours worked.

97.     The provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant.

98.     Accordingly, Plaintiffs and the members of the New York Classes are entitled to the compensation for each hour worked and overtime compensation for each hour worked in excess of forty (40) in a given workweek.

99.     By Defendants' failure to pay Plaintiffs and the New York Class members premium overtime wages for all hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL and the supporting New York State Department of Labor Regulations.

100.     Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class members are entitled to recover from Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the putative class, pray for relief as follows:

A.      That Defendants are found to have violated the Federal Fair Labor Standards Act as to Plaintiffs and the FLSA Class;

B.      That Defendants are found to have violated the provisions of the New York Labor Law as to Plaintiffs and the New York Class;

C.      That Defendants' violations as described above are found to be willful;

D.      That Defendants further be enjoined to cease and desist from unlawful activities in violation of the FLSA and NYLL;

E.      That at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as non-exempt employees.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

F.      That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

G.      Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class Counsel;

H.      An award to Plaintiffs and the FLSA and New York Classes for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

I.      Pre-judgment interest;

J.      An award of reasonable attorney's fees and costs pursuant to the NYLL and 29

U.S.C. § 216 and/or other applicable law; and

K.      For such other and further relief, in law or equity, as this Court may deem

appropriate and just.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury as to all issues so triable.

Dated:  October 1, 2015
           New York, New York                 Respectfully submitted,

                                               THE OTTINGER FIRM, P.C.

                                   By:   _____
                                               George Vallas
                                               Robert Ottinger
                                               Ariel Y. Graff
                                               401 Park Avenue South
                                               New York, New York 10016
                                               (212) 571-2000 (office)
                                               (212) 571-0505 (fax)
                                               george@ottingerlaw.com
                                               robert@ottingerlaw.com
                                               ari@ottingerlaw.com

                                               *Attorneys for Plaintiffs*