UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID DALTON, YOVANI BROADUS, and
DIORI JOHNSON, individual and on behalf of all
others similarly situated,

                              Plaintiffs,

                  -against-

GEM FINANCIAL SERVICES, INC., et al.,

                           Defendants.

Case No. 1:15-cv-05636-BMC

---

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE UNDER SECTION 216(b) OF THE FLSA

---

Paul J. Solda
THE LAW OFFICES OF PAUL J. SOLDA
Empire State Building
350 Fifth Avenue, 68th Floor
New York, New York 10118
Tel: (212) 967-3393
Fax: (212) 868-0013
ps@soldalaw.com

Gary Trachten
David N. Saponara
KUDMAN TRACHTEN ALOE LLP
Empire State Building
350 Fifth Avenue, 68th Floor
New York, New York 10118
Tel: (212) 868-1010
gtrachten@kudmalaw.com
dsaponara@kudmanlaw.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS........................................................................................................ i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

   I.   The Parties .............................................................................................................. 2

     A. GEM Pawnbrokers........................................................................................... 2

     B. Plaintiffs and Proposed Opt-In Plaintiffs ....................................................... 4

   II.  FLSA Collective Action Allegations ..................................................................... 5

     A. The Complaint ................................................................................................. 5

     B. Declarations of Diori Johnson and Natacha Toussaint ................................... 5

     C. Allegations Concerning Employees Classified as Exempt ............................. 6

ARGUMENT ..................................................................................................................... 7

   I.   Plaintiffs Are Not Entitled to Conditional Certification of a FLSA Collective Action ....... 7

     A. Plaintiffs Have Failed to Demonstrate the Existence of Potential Opt-In Plaintiffs that Are Similarly Situated to Plaintiffs................................................................................. 9

     B. Courts in this Circuit Routinely Deny Motions for Conditional Certification of FLSA Collective Actions Under Similar Facts ................................................... 12

     C. The Scope of Plaintiffs' Proposed Collective Class is Overbroad .................. 18

     D. Plaintiffs Misclassification Theory Fails ........................................................ 20

   II.  Should the Court Grant Plaintiffs' Motion, Plaintiffs' Request for Employee Contact Information Should Be Pared Down to Protect Employees' Privacy ................................ 21

   III.  Should the Court Grant Plaintiffs' Motion, Plaintiffs' Proposed Notice Potential Opt-In Plaintiffs Should be Revised .......................................................................... 22

     A. The Notice Should Reflect a Narrow Collective Action Group ....................... 22

     B. Notice Should Run From the Date of Entry of the Order Conditionally Certifying the Collective Action, Not the Date the Complaint Was Filed.............................. 23

     C. Plaintiffs' Proposed Notices Must Be Modified to Correct Inaccuracies and Include Additional Information .......................................................................... 24

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Anjum v. J.C. Penney Co.*,
No. 13-CV-460 (RJD)(RER), 2015 WL 3603973 (E.D.N.Y. June 5, 2015) ............................... 23

*Bah v. Shoe Mania, Inc.*,
No. 08-CIV.-9380 (LTS)(AJP), 2009 WL 1357223 (S.D.N.Y. May 13, 2009) ......................... 25

*Bai v. Zhuo*, No. 13-CV-5790 (ILG), 2014 WL 5475395 (E.D.N.Y. Oct. 29, 2014)............. 17, 18

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007) ............................ 22

*Feng v. Hampshire Times*,
No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015) ..................... 13, 14

*Fernandez v. On Time Ready Mix, Inc.*,
No. 14-CV-4306 (BMC), 2014 WL 5252170 (E.D.N.Y. Oct. 4, 2014) ................................ 10, 12

*Fu v. Mee May Corp.*,
No. 15 CIV. 4549 (KPF), 2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016) .................................... 10

*Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir. 2015) ........................................... 8

*Gu v. T.C. Chikurin, Inc.*,
No. 13-CV-2322 (SJ)(MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014)........... 15, 16, 18, 19

*Hernandez v. Immortal Rise, Inc.*,
No. 11-CV-4360 (RRM)(LB), 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) .......................... 24

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997).......................................................... 9

*Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................... 13

*Khan v. Airport Mgmt. Servs., LLC*,
No. 10 CIV. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ........................... 11, 19

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................... 24

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ......................... 7, 8, 9

*Mendoza v. Casa de Cambio Delgado, Inc.*,
No. 07-CV-2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ........................................... 10

*Monger v. Cactus Salon & SPA's LLC*,
No. 08-CV-1817 (FB)(WDW), 2009 WL 1916386 (E.D.N.Y. July 6, 2009) ............................. 20

*Morales v. Plantworks, Inc.*,
No. 05 CIV. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)................................... 11, 12

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................................... 7, 8, 9, 10, 20

*Prizmic v. Armour, Inc.*,
No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006)...................... 9, 10

*Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508 (E.D.N.Y. 2011) .............. 23, 24

*Zhang v. Wen Mei*, Inc.,
No. 14-CV-1647 (JS)(SIL), 2015 WL 6442545 (E.D.N.Y. Oct. 23, 2015).................................. 23

*Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
No. 13-CV-60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ..................................... 7, 11

**Statutes**

29 U.S.C. § 216............................................................................................................................. 8

## PRELIMINARY STATEMENT

Defendants GEM Financial Services, Inc. ("GEM"), GEM Pawnbrokers of NY Inc., GEM Pawnbrokers of Long Island Corp., GEM of Mount Vernon Inc., GEM of Melville Inc., GEM of Merrick, Inc., GEM of Hicksville LLC, GEM of Valley Stream LLC, and 608-8th Ave Corp. respectfully submit this memorandum of law in opposition to plaintiffs' motion seeking conditional certification of a collective action under the Fair Labor Standards Act (the "FLSA").

Plaintiffs' submissions in support of their motion fail to demonstrate the existence of "similarly situated" potential opt-in plaintiffs with respect to a common FLSA violation. All of the named plaintiffs and proposed opt-in plaintiffs worked as employees in the executive offices in GEM's corporate headquarters located in Brooklyn, New York, yet plaintiffs are seeking to conditionally certify a collective action group that would include all of plaintiffs' employees, including all retail personnel, without regard to their respective roles, responsibilities, locations, and compensation arrangements. Indeed, plaintiffs baldly assert, without any supporting facts, that their proposed collective action group should include managers who are classified as exempt.

Plaintiffs have not specifically identified a single potential opt-in plaintiff who worked outside of GEM's executive offices and was subject to the same purported overtime violations alleged in the Complaint. Instead, plaintiffs are asking this Court to take them at their word and certify a collective action group that includes employees with whom plaintiffs have no connection whatsoever. Defendants contend that plaintiffs have not met the burden necessary to obtain conditional certification of the overbroad collective action group that plaintiffs are proposing. Accordingly, defendants respectfully submit that the Court should deny plaintiffs' motion.

If the Court does grant plaintiffs' motion, then it should limit the scope of the collective action group to include only those non-exempt employees with whom plaintiffs worked in GEM's

executive offices. There is simply no basis on which this Court could reasonably conclude that all of defendants' employees—classified both as non-exempt and exempt and spread out across twenty-seven different locations throughout New York City, Westchester County, and Long Island—are similarly situated to plaintiffs and were subject to the same alleged violations of the FLSA. Moreover, many of the employees plaintiffs are seeking to include in their collective action group work in GEM's retail operations and who, unlike the named plaintiffs and proposed opt-in plaintiffs, deal with the public and carry out their job functions under completely different circumstances. Accordingly, the scope of plaintiffs' proposed collective action group is impermissibly overbroad and is not supported by the allegations in the Complaint or the declarations and other materials submitted in support of plaintiffs' motion.[1]

## STATEMENT OF FACTS

### I.      The Parties

#### A.  GEM Pawnbrokers

GEM Financial Services is the corporate parent of GEM Pawnbrokers, a nearly seventy-year old pawnbroker and jewelry enterprise presently consisting of twenty-seven individual retail locations. Wilen Aff. ¶ 2. Defendants GEM Pawnbrokers of NY Inc., GEM Pawnbrokers of Long Island Corp., GEM of Mount Vernon Inc., GEM of Melville Inc., GEM of Merrick, Inc., GEM of Hicksville LLC, and GEM of Valley Stream LLC are the operating entities for certain of GEM's individual retail locations.[2] Wilen Aff. ¶ 2 n.1. GEM's corporate offices are located within, but in

---

[1] The parties engaged in limited discovery as authorized by the Court in November 2015. Accordingly, in addition to the allegations in the Complaint and in the declarations submitted in support of plaintiffs' motion, defendants may rely on documents exchanged and deposition testimony given during the limited discovery period.

[2] Each of these entities owns and operates one or more individual retail locations. Wilen Aff. ¶ 2 n.1. For the ease of the Court, we refer to defendants collectively as "GEM."

a completely separate, secured area in the rear of, the main branch at 378 Schermerhorn Street, Brooklyn, New York 11217. Wilen Aff. ¶¶ 1, 4, 19.

GEM tracks its employees' work hours using an advanced biometric timeclock system provided by an entity called Stromberg Products, LLC. Wilen Aff. ¶ 5. All employees are required to clock in and out during their work shifts using fingerprint scanners. *Id.* GEM uses the Stromberg time records as a basis to calculate the number of hours each employee works each week. *Id.* GEM's payroll mangers (which included plaintiff Diori Johnson) in turn enter the clock reports into the ADP Total Resource system. *Id.* GEM's outside payroll company, ADP, then processes checks for GEM's employees. *Id.*

GEM maintains a company handbook (the "Handbook") that governs, among other things, the different policies that apply to its employees. Wilen Aff. ¶ 7. As is relevant to plaintiffs' claims in this action, the Handbook specifically provides that employees have an unpaid forty-five minute break for the noonday meal. *Id.* It also explicitly provides that all overtime hours must be approved in advance by a supervisor. Wilen Aff. ¶ 9. Each of the named plaintiffs and proposed opt-in plaintiffs signed forms acknowledging receipt of the Handbook, though they later disputed receipt during their respective depositions. Wilen Aff. ¶ 11.

With respect to the pawnbrokers, buy clerks, sales associates, and other employees that work in the conventional retail locations, the Handbook provides that they must arrive at the store thirty minutes before the start of their shift and stay fifteen minutes after the end of the shift. Wilen Aff. ¶ 8. GEM's corporate employees, who do not interface with the public or perform any functions that directly involve GEM's retail operations (i.e., approving loans or purchasing and

3

selling merchandise), were not subject to this policy and generally work standard eight-hour shifts (e.g., 9:00 a.m. to 5:00 p.m.).[3] *Id.*

### B.  Plaintiffs and Proposed Opt-In Plaintiffs

Plaintiff David Dalton ("Dalton") is a Brooklyn resident and former employee of GEM. Compl. ¶¶ 5, 24–25. He worked as an administrative and executive assistant in GEM's corporate offices from March 2014 to September 15, 2015. Compl. ¶¶ 5, 24–25. Plaintiff Yovani Broadus ("Broadus") is a Brooklyn resident and former employee of GEM. Compl. ¶¶ 6, 36–37. She worked as a marketing manager in GEM's corporate offices from March 2013 to May 2015. Compl. ¶¶ 6, 36–37. Plaintiff Diori Johnson is a Brooklyn resident and former employee of GEM. Compl. ¶¶ 7, 52–53. She worked as a staff accountant and dealt with payroll in GEM's corporate offices from November 4, 2013, to August 7, 2015. Compl. ¶¶ 7, 52–53; Johnson Decl. ¶ 2.

Proposed[4] opt-in plaintiff Natacha Toussaint ("Toussaint") is also a former employee of GEM. Toussaint Decl. ¶ 2. She worked as a human resources assistant and administrator at GEM's corporate offices from September 2013 to January 2016. Toussaint Decl. ¶ 2. Proposed opt-in plaintiff Saleece Bryan ("Bryan") is a former employee of GEM. *See* Pls.' Mem. of Law at 1. She is not mentioned anywhere in the Complaint, and she did not submit a declaration in support of plaintiffs' motion. She was, however, deposed by defendants on March 4, 2016, during which she

---

[3] The unpaid lunch policy applies to employees in GEM's executive offices notwithstanding that, unlike defendants' retail employees, they are not required to come in thirty minutes before their shifts start and to stay fifteen minutes after their shifts end. Rather, employees in GEM's executive offices are paid for forty hours of work even if their total compensable working hours in a given workweek are fewer than forty. To obtain compensable overtime, employees in the executive offices must work supervisor-approved overtime hours. The named plaintiffs and proposed opt-in plaintiffs in this case did in fact receive compensable overtime on many occasions, *see* Wilen Aff. ¶¶ 7, 12, 14, 16, despite their unsupported allegations to the contrary that it was GEM's stated policy to not pay employees overtime for hours worked in excess of forty. *See* Compl. ¶¶ 32, 44, 70; Johnson Decl. ¶ 20; Toussaint Decl. ¶ 8.
[4] Plaintiffs' counsel filed opt-in forms for the potential opt-in plaintiffs in the absence of an order from the Court conditionally certifying a FLSA collective action. Plaintiffs have not sought to amend the Complaint to add these individuals as named plaintiffs.

testified that she worked as a human resources assistant beginning in September 2015, lasting just three weeks before she was terminated. Wilen Aff. ¶ 16 n.7.

## II.    FLSA Collective Action Allegations

### A.  The Complaint

Plaintiffs allege that GEM has failed to pay them proper overtime in accordance with the FLSA by "systematically underreporting the hours worked by its non-exempt employees who were paid on an hourly basis [and] unlawfully failing to provide compensation for all hours worked." Compl. ¶¶ 1–4, 38–46. In the sections of the Complaint dealing specifically with Dalton and Broadus, plaintiffs allege that Dalton and Broadus learned "[t]hrough conversations with colleagues" that "all other hourly employees were subject to the Company's unlawful policy of refusing to compensate employees for all hours worked and refusing to provide an overtime premium to employees who work more than 40 hours in a workweek." Compl. ¶¶ 34, 46. The Complaint does not identify who these colleagues were, where they worked, what their job functions were, during what time period they worked, or any other information that would help assess the veracity of these allegations. The Complaint was not verified and had no exhibits.

### B.  Declarations of Diori Johnson and Natacha Toussaint

Plaintiffs submitted declarations from Johnson and Toussaint in an attempt to support their motion. Johnson alleges in her declaration—in a purposefully vague fashion—that she received "numerous complaints" concerning unpaid overtime claims from other unidentified employees. Johnson Decl. ¶¶ 29–32. She claims that "[t]wo members of the cleaning staff were not being paid overtime even though they worked over 40 hours per week." Johnson Decl. ¶ 36. Johnson does not identify the basis for this allegation, so it is unclear during what time period these complaints were made, whether she actually spoke with these individuals, or if she reached this conclusion based on her own personal observations, conversations with other unidentified individuals, or through

5

her review of other unidentified documents and information. Johnson makes similar claims with respect to "[a] sales associate at the We Buy Department at Castle Hill" and "[an] hourly sales associate at the Gem Financial Schermerhorn main office." Johnson Decl. ¶¶ 37–38. To be sure, none of these unidentified employees submitted declarations in support of plaintiffs' motion.

Toussaint's declaration offers even fewer details than Johnson's. She claims that she "heard numerous complaints, as often as one complaint a day," from employees working as "sales managers, covering managers, pawnbrokers, and sales associates, but [she] also heard from the Electronics Department, call center employees, [and] District Leaders"—essentially all of GEM's employees. Toussaint Decl. ¶¶ 13–16. Toussaint's declaration does not identify a single complaining employee by name, nor does she specify the locations where they worked or when or where she received these alleged complaints.

Significantly, plaintiffs did not submit declarations from Dalton or Broadus (both named plaintiffs) or Bryan, who is identified only in plaintiffs' memorandum of law in support of this motion. *See* Pls.' Mem. of Law at 1. All of these individuals worked in GEM's executive offices at its corporate headquarters located in Brooklyn, New York. None of them are alleged to have worked in a retail or non-corporate capacity in any of GEM's twenty-seven retail locations in New York City, Westchester County, or Long Island.[5]

**C.  Allegations Concerning Employees Classified as Exempt**

Plaintiffs do not mention exempt employees anywhere in the Complaint. Indeed, the scope of the proposed collective action group was defined in the Complaint as follows: "All non-exempt employees paid on an hourly basis who worked at any of the locations owned and/or operated by

---

[5] Some of the named plaintiffs and proposed opt-in plaintiffs may have on limited occasions visited some of GEM's retail locations for discrete purposes, but none of them ever worked outside of GEM's corporate offices for any length of time exceeding a morning or afternoon. *See* Wilen Aff. ¶¶ 14, 16.

Defendants, or who were otherwise employed by any Defendant, within the three years prior to this action's filing date through the date of the final disposition of this action." Compl. ¶ 64. In their motion, however, plaintiffs are now seeking to expand their already overbroad proposed collective action group to include employees classified as exempt managers. *See* Pls.' Mem. of Law at 1 n.1, 8–9.

*None of the named plaintiffs or proposed opt-in plaintiffs were classified as exempt managers.* Thus, they do not have any personal knowledge concerning the job functions or compensation arrangements of the individuals who are classified as exempt managers and who work in GEM's retail locations. The declarations submitted in support of this motion do not identify with any specificity who these managers are, what their job responsibilities are, or how they are compensated. Rather, the declarations state in conclusory manner that certain unidentified employees that are classified as exempt were docked hours for unpaid lunches or when they arrived late for work. Johnson Decl. ¶¶ 39–41; Toussaint Decl. ¶¶ 21–22.

## ARGUMENT

### I.    Plaintiffs Are Not Entitled to Conditional Certification of a FLSA Collective Action

Courts in the Second Circuit engage in a two-step process to determine whether FLSA collective action certification is appropriate. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60 (ILG), 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013) ("District courts employ a two-step process in determining whether a matter should proceed as a collective action.").

The first step—the "notice stage"—"involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555; *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The first step is the

notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery."). If the court finds that the named plaintiffs and potential opt-in plaintiffs are similarly situated, then it can authorize the plaintiff to send out a court-approved notice to the potential opt-in plaintiffs, offering each individual an opportunity to join the lawsuit by filing a consent form with the court.[6]

On the second step, the Court determines whether discovery has revealed that the potential opt-in plaintiffs really are not similarly situated, and if not, then the court may choose to de-certify the collective action and dismiss the opt-in plaintiffs' claims without prejudice. *See Myers*, 624 F.3d at 55 ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."); *Lynch*, 491 F. Supp. 2d at 368 ("During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated. This stage typically occurs on a defendant's motion for decertification. As a result of this two-step stage, the initial 'conditional certification' determination is merely a preliminary finding. If, after discovery, it is apparent that plaintiffs and others are not similarly situated, the court may 'de-certify' the class and dismiss the claims of the opt-in plaintiffs without prejudice.").

---

[6] Unlike a Rule 23 class action, plaintiffs must expressly opt-in to participate in a FLSA collective action. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 387 (2d Cir. 2015) ("The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it.").

By this motion, plaintiffs are seeking conditional certification under the first step of the process. The parties have already undertaken limited discovery, and the spurious nature of plaintiffs' claims have become abundantly clear. Accordingly, defendants respectfully submit that plaintiffs have failed to meet their burden of demonstrating that there are *similarly situated* employees of GEM that were victims of a common policy or plan that violated the FLSA. For this reason, the Court should deny plaintiffs' motion.

### A.  Plaintiffs Have Failed to Demonstrate the Existence of Potential Opt-In Plaintiffs that Are Similarly Situated to Plaintiffs

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

The "modest factual showing" standard is fairly liberal, but unsupported, conclusory allegations in the plaintiffs' pleadings and supporting affidavits that fail to establish a nexus with the putative collective action members will result in denial of conditional certification.[7] *See Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)) ("The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'"); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07-CV-2579 (HB), 2008 WL 938584, at *1

---

[7] The court is limited to considering the pleadings, affidavits, and limited discovery exchanged to date at this first stage. *See Lynch*, 491 F. Supp. 2d at 368 (noting that the court makes the first step determination "based on plaintiffs' pleadings and affidavits") (S.D.N.Y. 2007).

(S.D.N.Y. Apr. 7, 2008) ("While this is a very liberal standard, conclusory allegations or lack of a nexus with the putative class will prevent the case from moving forward as a collective action."). In order to meet the initial standard, plaintiffs must show that "they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555, (quoting *Hoffman*, 982 F. Supp. at 261). "A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations. Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Prizmic*, 2006 WL 1662614, at *2 (quoting *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995)).

"Employee affidavits must set forth 'a defendant's plan or scheme to not pay overtime compensation' and must identify 'by name similarly situated employees.'" *Fernandez v. On Time Ready Mix, Inc.*, No. 14-CV-4306 (BMC), 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)). Referring to potential opt-in plaintiffs as co-workers or by their job titles alone is insufficient to meet this burden. *See id.* at *2.

This Court has had occasion to weigh in on the underlying rationale for requiring plaintiffs to submit at least some details concerning the proposed opt-in plaintiffs, ultimately determining that a plaintiff's failure to identify proposed opt-in plaintiffs by name was "fatal to plaintiffs' motion" for conditional certification of a FLSA collective action:

> The reason for requiring at least some specific information is obvious. There is no way to test what plaintiff has stated. We might as well just take his word for it that he has talked to some number of unnamed other workers, made his own evaluation of what they have told him, and authorize the sending of notice on his say-so. But minimal as the test is, it is more than that.

*Id.* Other courts in the Second Circuit are in accord. *See Fu v. Mee May Corp.*, No. 15 CIV. 4549 (KPF), 2016 WL 1588132, at *4 (S.D.N.Y. Apr. 20, 2016) ("Had Plaintiffs included a Declaration

substantiating the alleged scheme from any current or former employee engaged in a different type of work at Mee May—or had the existing Declarations alleged with particularity the duties, hours, or wages of non-delivery workers—Plaintiffs might clear the "modest factual showing" required by the Second Circuit."); *Zheng*, 2013 WL 5132023, at \*5; *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735 (NRB), 2011 WL 5597371, at \*5 (S.D.N.Y. Nov. 16, 2011) ("The declarations submitted in support of Khan's motion from his three former co-workers are also lacking, as they provide vague and conclusory statements that fail to specifically identify the other managers who are allegedly similarly situated to plaintiff."); *Morales v. Plantworks, Inc.*, No. 05-CV-2349 (DC), 2006 WL 278154, at \*3 (S.D.N.Y. Feb. 2, 2006).

Nowhere in the Complaint or in their declarations in support of this motion do plaintiffs specifically identify other employees who were subjected to the same overtime violations that plaintiffs allege in the Complaint. Nor do they attempt do demonstrate how they are similarly situated to employees that worked outside of the executive offices in GEM's corporate headquarters with respect to their job functions and pay practices—in particular, the majority of GEM's non-exempt retail employees who are rigorously trained as pawnbrokers or secondhand dealers or jewelers (gemologists). *See* Wilen Aff. ¶ 4. If anything, the positions that the named plaintiffs and proposed opt-in plaintiffs have taken to date detract from their argument that they were similarly situated to defendants' employees that worked outside of GEM's executive offices (e.g., pawnbrokers, sales associates, etc.), as they all contend—albeit incorrectly—that they were subject to different employment policies, namely that the unpaid lunch policy did not apply to them. *See* Wilen Aff. ¶ 7, 17.

Moreover, plaintiffs baldly assert in the Complaint that the collective action group includes all non-exempt hourly employees, without regard to their job functions or the locations where they

worked. Compl. ¶¶ 64–69. Through their declaration submitted in support of this motion, plaintiffs attempt—but fail—to cure this patent deficiency by rattling off as many different job titles as they can, while asserting (without any basis) that the unidentified employees that worked in these roles just so happened to also complain about not being paid proper overtime. *See* Johnson Decl. ¶¶ 36–38; Toussaint Decl. ¶¶ 13–16. Simply put, plaintiffs' motion lacks merit and the evidentiary support necessary to succeed.

Much like the plaintiff in *Fernandez*, plaintiffs here are asking this Court to take them at their word that other unidentified employees are similarly situated to them and, based solely on their *ipse dixit*, are requesting that this Court authorize providing notice to employees with whom plaintiffs have failed completely to demonstrate any connection. In the end, plaintiffs' failure to identify these purported similarly situated employees by name is fatal to their motion for conditional certification. *See Fernandez*, 2014 WL 5252170, at *2.

Furthermore, plaintiffs' conclusory, unsupported allegations do not provide the "modest factual showing" of a nexus to the putative class members also necessary to obtain conditional certification. *See Morales*, 2006 WL 278154, at *3. Plaintiffs must offer more than such mere conclusory allegations. *See id.* ("Here, plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value. Because plaintiffs have failed to meet this minimal requirement, their motion for class certification is denied."). They have not done so. On this basis, the Court should deny plaintiffs' motion.

### B.  Courts in this Circuit Routinely Deny Motions for Conditional Certification of FLSA Collective Actions Under Similar Facts

Courts in this Circuit do often grant motions seeing conditional certification where the named plaintiffs offer at least some specific details concerning similarly situated employees. However, certification is not a foregone conclusion, particularly where the named plaintiffs fail to

offer anything other than vague, conclusory allegations in unreliable statements in support of their motion. Stated succinctly: "While the burden on the plaintiff at the conditional certification stage is modest, 'it is not non-existent.'" *See Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012) (quoting *Khan*, 2011 WL 5597371, at *5).

The cases discussed below all involve situations where the plaintiffs failed to convince the court that there were similarly situated potential opt-in plaintiffs that suffered from the same overtime violations alleged by the named plaintiffs. Each is similar to the facts of this case and further demonstrates that plaintiffs have failed to meet the burden necessary to succeed on this motion. A brief review of these cases may clarify for this Court why plaintiffs' should fail.

In *Feng v. Hampshire Times*, No. 14-CV-7102 (SHS)(JLC), 2015 WL 1061973 (S.D.N.Y. Mar. 11, 2015), Magistrate Judge Cott of the Southern District of New York denied the plaintiffs' motion seeking conditional certification of a FLSA collective action where current and former deliverymen at the defendants' restaurants brought an action against the defendants alleging claims for, among other things, violations of the applicable overtime provisions of the FLSA and NYLL. *Feng*, 2015 WL 1061973, at *1. The plaintiffs moved "for conditional certification of a putative class of the named plaintiffs and all current and former employees of the Restaurants who performed work as non-exempt, non-managerial employees." *Id.*

The named plaintiffs each "submitted a virtually identical affidavit in support of their motion," claiming that they worked for the defendants and "that they did not receive overtime compensation for hours worked in excess of 40 hours per week." *Id.* at *2. However, the only allegation that addressed similarly situated employees was a single, identical statement found in each of the affirmations submitted in support of the motion seeking conditional certification: "Regarding other potentially 'similarly situated' employees of Defendants, the affidavits each

contain only one short (and identical) statement. Each plaintiff asserts that he is 'unaware of any employees who receive overtime pay in the restaurant because [he has] had conversations with them, and compared wages.'" *Id.* at *3. The court found that this statement was insufficient to meet the modest burden necessary to succeed on a motion for conditional certification. *Id.* "The fact that Plaintiffs are 'unaware of any employees who receive overtime pay' is not a sufficient factual basis on which to conditionally certify a FLSA collective action as to all of Defendants' non-managerial, non-exempt employees." Rather, "[t]o meet their burden, Plaintiffs were obligated to provide 'some probative information regarding similarly situated employees such as their names, their duties and their hours worked.'" *Id.* (quoting *Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ)(MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014)). Without this information, the court could not "grant Plaintiffs' motion to send notice to such a broad class of putative plaintiffs." *Id.*

The *Feng* Court also declined to conditionally certify a collective action consisting solely of employees employed as deliverymen in the same capacity as the named plaintiffs. *Id.* ("While each of the named plaintiffs worked as a deliveryman and asserts that he was subject to Defendants' common policy in violation of the FLSA, Plaintiffs have not provided the Court with anything on which to determine that there are other similarly situated deliverymen employed by Defendants."). Again referring to the plaintiffs' insufficient allegation concerning other employees, the *Feng* Court correctly noted that the plaintiffs failed to identify whom the other employees were, what their compensation structures entailed, whether they performed similar tasks, and whether they worked enough hours to qualify for overtime compensation. *Id.* In sum, based on the named plaintiffs' complete failure to provide any specific details that would enable the *Feng* Court to

14

infer that there were similarly situated employees, the Court denied the plaintiffs' motion for conditional certification.

*Feng* is similar to this case in two important respects. First, although the universe of aggrieved individuals was limited to the named plaintiffs, the plaintiffs sought to conditionally certify a collective action that would encompass a much broader group—i.e., all of the defendants' non-exempt employees. Plaintiffs in this case are overreaching even further than the named plaintiffs in *Feng*, as they are asking this Court to include exempt employees in the collective action group. *See* Pls.' Mem. of Law at 1 n.1, 8–9. Second, the named plaintiffs' affirmations in support of their motion did not provide sufficient details concerning the alleged similarly situated employees, but merely stated that they were unaware of other employees that received overtime. The declarations submitted in support of plaintiffs' motion here similarly fail because they do not specifically identify any potential opt-in plaintiffs that worked outside of GEM's executive offices. For these reasons, this Court should reach the same result as in *Feng* and deny plaintiffs' motion.[8]

*Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ)(MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014), is also similar to the facts of this case. In *Gu*, the seven named plaintiffs—deliverymen in the defendants' restaurants—brought an action for state and federal overtime violations. *Gu*, 2014 WL 1515877, at *1. They moved for "an order permitting them to send notice to all current and former non-managerial restaurant staff employed by defendants who worked for any of defendants' locations at any time after" the specified date. *Id.* at *2. In support of their motion, the named plaintiffs submitted largely identical declarations stating that they were each "paid the same

---

[8] Johnson worked as a payroll manager, and Toussaint worked as a human resources manager. If there truly were similarly situated employees, one would think that the named plaintiffs and proposed opt-in plaintiffs, having had access to the pertinent records throughout their respective periods of employment with GEM, would be able to identify them by name, as opposed to making vague, unsupported assertions. Defendants respectfully submit that they cannot specifically identify any other similarly situated employees because there are none.

amount of money regardless of the number of hours worked" and that they each "spoke to other employees and . . . 'found out that they were paid weekly salaries that were less than the minimum and that they did not receive extra pay for working overtime or for working more than 10 hours in a day.'" *Id.* However, the declarations did provide any other details about these employees *Id.*

Magistrate Judge Go correctly noted that the plaintiffs could not meet their relatively low burden with unsupported assertions alone. *Id.* at *3 "Although plaintiffs' burden is not onerous, they must provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations." *Id.* After considering the plaintiffs' submissions and the applicable legal standards, Magistrate Judge Go determined that the plaintiffs had not met their burden to show that there were similarly situated employees that could join a collective action as opt-in plaintiffs:

> Plaintiffs make only general allegations that other employees of defendants were denied minimum wage and overtime compensation. Plaintiffs fail to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation. Nor do they identify the job titles or duties performed by their fellow employees. The plaintiffs who worked at more than one location did not specify to which location their observations pertained. . . . Plaintiffs have not provided a factual basis for the court to consider whether the employees plaintiffs refer to are similarly situated to them.

*Id.* She went on to note that, "[b]esides failing to submit sufficient specific factual information to meet their modest burden to show that plaintiffs and other potential plaintiffs were victims of an unlawful common policy or plan, plaintiffs seek to define an overly broad class" that included all of the employees in the defendants' restaurants. *Id.* at 4. The plaintiffs' submissions in support of their motion were insufficient to establish that there were any similarly situated employees employed in the same position as the plaintiffs. If follows that these same submissions did not come close to justifying a certification that included all of the defendants' non-managerial employees, without regard to their specific job functions or compensation arrangements. Like

*Feng*, *Gu* is on point with the facts of this case and supports denying plaintiffs' motion for conditional certification.[9]

*Bai v. Zhuo*, No. 13-CV-5790 (ILG), 2014 WL 5475395 (E.D.N.Y. Oct. 29, 2014), has somewhat different facts than *Feng*, *Gu*, and this case, but its holding is equally as applicable. In *Bai*, the plaintiff worked as a busboy at a restaurant located in Queens, New York. *Bai*, 2014 WL 5475395, at *1. He brought an action against the defendants alleging overtime violations under the FLSA and the NYLL and moved for "conditional certification of a collective action on behalf of all non-managerial chefs, waiters, kitchen workers, dishwashers, bus persons, and delivery persons, who worked at the restaurant . . . during the three years prior to the filing of the motion, were paid on an hourly basis, and were not paid the wages they were due." *Id.* In support of his motion, the plaintiff submitted two affidavits, both of which were his own. *Id.* at *2.

Magistrate Judge Gold quickly spotted the factual inaccuracies and other deficiencies in the plaintiffs' affidavits. Specifically, Magistrate Judge Gold found that the employees identified in the affidavits as similarly situated to the plaintiff ceased working for the defendants well before the earliest possible violation date, as measured against the applicable statute of limitations period. *Id.* at 3. Additionally, the only other employees that the plaintiff identified in his affidavit were not specifically named and were not employed by the appropriate defendants. *Id.* Based on these issues, Magistrate Judge Gold determined that the plaintiff's affidavits were unreliable and denied the plaintiffs' motion. In closing, Magistrate Judge Gold noted that the "[p]laintiff's failure to submit an affidavit from any employee other than himself, even in reply to defendants' opposition, is particularly striking in light of defendants' repeated arguments in their opposition papers that a

---

[9] Johnson's declaration attempts to overcome some of the deficiencies that Magistrate Judge Go noted in *Gu* by referring to certain allegedly similar employees by their job titles. *See* Johnson Decl. ¶¶ 36–38. However, as noted above, this Court has previously held that failure to identify potential opt-in plaintiffs by name is fatal to a motion seeking conditional certification of a collective action under the FLSA. *See Fernandez*, 2014 WL 5252170, at *2.

plaintiff's own affidavit, without more, is insufficient to support a motion for leave to proceed pursuant to Section 216(b)." *Id.* at 4. Just like the plaintiff's affidavits in *Bai*, plaintiffs' declarations submitted in support of this motion fail to identify with any specificity employees other than themselves that were subjected to the overtime violations alleged in the Complaint. Based on this omission by itself, plaintiffs have failed to meet the modest burden necessary to succeed on their motion for conditional certification.

After considering the cases discussed above, it is clear that courts in the Second Circuit do routinely deny motions seeking conditional certification of an FLSA collective action where the plaintiffs fail to offer specific factual allegations concerning similarly situated employees that experienced the same alleged FLSA violations. *See Gu*, 2014 WL 1515877, at *3–4. In this case, plaintiffs have not offered a single well-pleaded, non-conclusory allegation that would enable this Court to reasonably infer that there are employees that worked outside of the corporate offices of GEM that were subject to the same FLSA overtime violations as alleged by the named plaintiffs in the Complaint. For this reason, the Court should deny plaintiffs' motion.

**C.  The Scope of Plaintiffs' Proposed Collective Class is Overbroad**

Plaintiffs are seeking conditional certification of a collective action group composed of all of defendants' employees, without regard to job function, work location, or even exempt status. As explained above, plaintiffs have failed to set forth any well-pleaded allegations that would enable this Court to reasonably infer that the overtime violations alleged in the Complaint—to the extent there were any at all[10]—affected any employees other than the executive employees that worked in GEM's corporate offices in Brooklyn. For this reason, plaintiffs' contention that this Court should conditionally certify a collective action group composed of all of defendants'

---

[10] Defendants strenuously contend that the named plaintiffs and proposed opt-in plaintiffs were fully and properly paid for all qualifying, approved overtime hours that they worked during their respective period of employment with GEM.

18

employees across all twenty-seven of its locations throughout New York City, Westchester County, and Long Island is truly absurd.

As noted above, in *Gu*, Magistrate Judge Go made short work of the plaintiffs' attempt to conditionally certify a collective action group including all restaurant employees where the plaintiffs failed "to submit sufficient specific factual information to meet their modest burden to show that plaintiffs and other potential plaintiffs were victims of an unlawful common policy or plan." *Gu*, 2014 WL 1515877, at *4. She noted that "[c]ourts ordinarily will allow notice of a fairly broad class of employees at this stage . . . , but '[w]here the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted.' *Id.* (quoting *Flores v. Osaka Health SPA, Inc.*, No. 05-CIV-962 (VM)(KNF), 2006 WL 695675, at *3.

Similarly, in *Khan v. Airport Mgmt. Servs., LLC*, No. 10 CIV 7735 (NRB), 2011 WL 5597371, (S.D.N.Y. Nov. 16, 2011), Judge Buchwald of the Southern District of New York stated as follows with respect to a plaintiff's attempt to define collective action group as including all employees with a specific title, where he failed to meet the initial burden of demonstrating that there were similarly situated employees at all:

> Khan requests that the potential class include any current or former employee within the applicable time period who held a title that included the term "Manager." As previously referenced, defendants maintain at least sixteen different managerial titles, with the highest such position being that of General Manager. Khan implicitly concedes in his allegations that General Managers have far different (and greater) responsibilities than Warehouse Managers or Operations Managers. Moreover, Khan does not even claim to have personal knowledge that individuals with titles other than Warehouse Manager or Operations Manager have been misclassified as exempt. Thus, we fail to understand why Khan would continue to seek such an overbroad class.

*Khan*, 2011 WL 5597371, at *5 n.7.

19

Here, while plaintiffs list in passing a variety of different job titles that GEM's employees hold, their principal contention is that the collective action group should include all of defendants' employees, without regard to position, location, or exempt/non-exempt classification. Plaintiffs have submitted nothing in support of this motion that would enable this Court to collectively certify such a broad group of individuals. There is no factual nexus between the named plaintiffs' alleged terms and conditions of employment and those of GEM's non-corporate employees that work in any of the twenty-seven retail locations. *See Monger v. Cactus Salon & SPA's LLC*, No. 08-CV-1817 (FB)(WDW), 2009 WL 1916386, at *2 (E.D.N.Y. July 6, 2009) ("Plaintiffs' only evidence that other locations' employees are similarly situated is that they 'believe' that all hair stylists and shampoo assistants are subject to the same polices. They offer no basis for this belief; they name no individuals at other salons who are similarly situated; and they provide no documentary evidence that policies are the same at different Cactus Salon locations."). For this reason, the Court should deny plaintiffs' motion.

### D. Plaintiffs Misclassification Theory Fails

Plaintiffs contend in their motion for conditional certification—but not in their Complaint—that the proposed collective action group should include managerial employees who are classified as exempt. *See* Pls.' Mem. of Law at 1 n.1, 8–9. However, nowhere in their submissions in support of the motion do they specifically address either the job requirements or pay provisions of any of the exempt employees that they claim are similarly situated, as required under Second Circuit precedent. *See Myers*, 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008)) ("In a FLSA exemption case, plaintiffs accomplish this by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a

common policy or scheme."). Rather, Johnson's declaration refers to exempt employees categorically and without specifying whom they are, what type of work they do, or the locations where they work. Johnson Decl. ¶¶ 39–41. Toussaint's declaration offers some additional detail, as she at least refers to these employees as "exempt managers," but her declaration is similarly devoid of information concerning the job requirements or pay provisions of these unidentified managerial employees. Toussaint Decl. ¶¶ 21–22.

## II.    Should the Court Grant Plaintiffs' Motion, Plaintiffs' Request for Employee Contact Information Should Be Pared Down to Protect Employees' Privacy

Plaintiffs are seeking an order directing defendants to produce "the names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment" of all of GEM's employees. Pls.' Mem. of Law at 9–10. As argued above, defendants submit that plaintiffs have not met their burden to conditionally certify a collective action under the FLSA. They certainly have not demonstrated a factual nexus between their own job duties and compensation and those of every other exempt and non-exempt employee of GEM. Since this Court may not certify a collective action that includes all of defendants' current and former employees, plaintiffs should not be entitled to the personal information of all employees.

If the Court chooses to conditionally certify a narrower collective action group—such as only those non-exempt, hourly employees that worked in GEM's corporate offices—then defendants are prepared to provide such information as may be necessary to provide notice to those specific individuals. However, defendants believe that plaintiffs' requests, as currently stated, go far beyond the bounds of what is reasonably necessary.

Plaintiffs' request for home and mobile telephone numbers and dates of employment are unnecessary and violative of the privacy rights of GEM's current and former employees. Accordingly, defendants submit that plaintiffs' request for contact information, if it is to be granted

at all, should be pared down to include only names, last known addresses, and known e-mail addresses. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (holding that "only the names, current or last known addresses of class members, as well as known email addresses, shall be provided").

### III.     Should the Court Grant Plaintiffs' Motion, Plaintiffs' Proposed Notice Potential Opt-In Plaintiffs Should be Revised

As set forth above, plaintiffs have not met the low burden necessary to obtain conditional certification of a collective action under the FLSA. However, if this Court does choose to grant plaintiffs' motion and conditionally certify a narrowly defined collective action group, defendants respectfully submit that the notice proposed by plaintiffs should be modified in several respects.

First, the notice should be revised to reflect the narrower collective action group approved by the Court. Second, providing notice to potential opt-in plaintiffs based on a three-year statute of limitations running from commence of the action is inappropriate in this case. Third, as currently drafted, plaintiffs' proposed notice to potential opt-in plaintiffs is inaccurate, one-sided, and lacks crucial information. It should be amended to specify the precise nature of plaintiffs' FLSA claims, identify defendants' attorneys, and disclose the discovery obligations and potential costs that joining the lawsuit entails.

#### A.  The Notice Should Reflect a Narrow Collective Action Group

As discussed at length above, plaintiffs have not demonstrated that they are similarly situated to all of GEM's employees at all twenty-seven of its locations. Accordingly, this Court cannot conditionally certify such a broad collective action group based on plaintiffs' inadequate submissions. If the Court does conditionally certify a collective action, then the proposed notice and publication procedures must be revised to reflect the narrower group of employees that the

Court may find to be similarly situated to plaintiffs. *See Anjum v. J.C. Penney Co.*, No. 13-CV-460 (RJD)(RER), 2015 WL 3603973, at *12 (E.D.N.Y. June 5, 2015).

### B. Notice Should Run From the Date of Entry of the Order Conditionally Certifying the Collective Action, Not the Date the Complaint Was Filed

Under 29 U.S.C. § 255(a), "[t]he statute of limitations period for claims of unpaid wages or unpaid overtime compensation under the FLSA is two years from the date the claim accrued, or three years from the accrual date if the violation of the Act was willful." *Zhang v. Wen Mei*, Inc., No. 14-CV-1647 (JS)(SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015). "The Second Circuit has stated that 'a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act.'" *Id.* (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988)).

Plaintiffs allege in the Complaint—in a conclusory, unsubstantiated fashion—that defendants' alleged violations of the FLSA were willful. *See* Compl. ¶¶ 72, 91–92. Notably, plaintiffs' affirmations submitted in support of this motion do not claim that defendants' alleged violations were willful. Defendants contend that the allegations in the Complaint, standing alone, are insufficient for this Court to reasonably infer that defendants' knowingly violated or showed reckless disregard for the applicable provisions of the FLSA. For this reason, defendants respectfully submit that providing notice to potential opt-in plaintiffs based on a three-year statute of limitations is inappropriate in this case.

However, defendants recognize that, where willfulness is disputed, courts in the Second Circuit generally authorize notice to potential opt-in plaintiffs based on a three-year statute of limitations, allowing defendants to challenge the statute of limitations on a more fully developed record during the second step of certification process. *See Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011). Accordingly, if the Court chooses to direct notice

to potential opt-in plaintiffs based on a three-year statute of limitations, defendants reserve their rights to revisit this issue at a later date. Moreover, the notice should be provided to only those employees who were employed within three years from the date of this Court's order directing notice, and not the date this action was commenced. *See id.* ("[T]he notice of pendency shall be directed to potential opt-in plaintiffs that worked for the Stores in the three years preceding the date of this Order."); *see also Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM)(LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) ("[D]efendants accurately point out that any notice period generally shall be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint."); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008) (measuring three-year statute of limitations for potential opt-in plaintiffs based on date of order granting conditional certification).

### C. Plaintiffs' Proposed Notices Must Be Modified to Correct Inaccuracies and Include Additional Information

There are several other issues with plaintiffs' proposed notice that must be remedied should this Court grant plaintiffs' motion for conditional certification and authorize notice to a narrowly defined group of potential opt-in plaintiffs. Defendants' proposed revisions, which are outlined below, are reasonable and routinely approved by courts in the Second Circuit.

First, the proposed notice makes several references to minimum wage violations, but nowhere in the Complaint do plaintiffs make any allegations, or assert any claims, concerning minimum wage violations. The proposed notice should be revised to specify that plaintiffs' claims are limited to alleged overtime violations.

Second, the proposed notice does not provide the contact information for defendants' counsel. The notice should be revised to include defendants' counsel's firm name, address, phone number, and fax number as well as the names of the attorneys primarily responsible for the case.

Courts routinely approve requests for this information to be included on collective action notices. *See Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011) (finding reasonable defendants' request that its counsel's "name, address, and telephone number be included on the notice"); *Bah v. Shoe Mania, Inc.*, No. 08-CIV.-9380 (LTS)(AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009).

Third, the proposed notice fails to advise potential opt-in plaintiffs of the discovery obligations that they must fulfill if they consent to join the lawsuit and that, if they do not prevail on their claims, they may be required to pay defendants' costs. It should be revised to specify that potential opt-in plaintiffs may be required to give testimony and information concerning their employment and that they may be required to pay defendants' costs if they do not prevail. Courts commonly grant requests by defendants that a statement to this effect be included in notices sent out to potential opt-in plaintiffs. *See Moore*, 276 F.R.D. at 61 ("Defendants appear simply to want to add that potential plaintiffs may be required to respond to written discovery and pay costs if they do not prevail. The Court finds that these are reasonable additions."); *Bah*, 2009 WL 1357223, at *4 (emphasis in original) ("Plaintiff must modify the notice to inform the potential plaintiffs that, if they opt in, they *may* be asked to . . . pay litigation costs.").

## CONCLUSION

For the reasons set forth above, defendants respectfully submit that the Court should deny plaintiffs' motion. Should the Court grant plaintiffs' motion, defendants respectfully submit that collective action group should be narrowly defined to include only those non-exempt employees that worked in GEM's executive offices. Moreover, defendants respectfully submit that the notice sent to proposed opt-in plaintiffs should be modified as set forth above.

Dated:  New York, New York
        May 10, 2016

By:    /s/ Paul J. Solda
       Paul J. Solda
       THE LAW OFFICES OF PAUL J. SOLDA
       Empire State Building
       350 Fifth Avenue, 68th Floor
       New York, New York 10118
       Tel: (212) 967-3393
       Fax: (212) 868-0013
       ps@soldalaw.com

       Gary Trachten
       David N. Saponara
       KUDMAN TRACHTEN ALOE LLP
       Empire State Building
       350 Fifth Avenue, 68th Floor
       New York, New York 10118
       Tel: (212) 868-1010
       gtrachten@kudmalaw.com
       dsaponara@kudmanlaw.com

       *Attorneys for Defendants*