```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
DAVID DALTON, YOVANI BROADUS, AND                           :
DIORI JOHNSON, individually and on behalf of                :
all others similarly situated,                              :       MEMORANDUM
                                                            :       DECISION AND ORDER
                                 Plaintiffs,                :
                                                            :       15 Civ. 5636 (BMC)
              -against-                                     :
                                                            :
                                                            :
                                                            :
GEM FINANCIAL SERVICES, Inc., et al.,                       :
                                                            :
                                 Defendants.                :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiffs commenced this collective action under the Fair Labor Standards Act ("FLSA") and as a putative class action under the New York Labor Law ("NYLL"), seeking unpaid wages, overtime compensation, liquidated damages, pre- and post-judgement interest, attorneys' fees and costs, and a declaratory judgement that the practices complained of are unlawful. Before the Court is plaintiffs' motion for conditional certification as a collective action under section 216(b) of the FLSA, as well as court-authorized notice to all of defendants' similarly situated employees – both those that defendants classify as non-exempt and those that defendants classify as exempt.

For the reasons stated below, plaintiffs' motion for conditional certification, court authorized notice, and disclosure of contact information is granted with respect to defendants' non-exempt employees, but denied with respect to defendants' exempt employees.

## BACKGROUND

GEM Financial Services is the corporate parent of GEM Pawnbrokers, a pawnbroker and jewelry enterprise consisting of 28 individual retail locations throughout New York City,

Westchester County, and Long Island (collectively, "GEM").  GEM tracks its employees' work hours using a timeclock system which requires employees to clock in and out during their work shifts using fingerprint scanners.  All employees are required to work 8-hour shifts, with an unpaid 45-minute lunch break, and must arrive 30 minutes before opening and remain until 15 minutes after closing.  GEM classifies approximately 35 to 40 of its approximately 130 employees as "managers" who, it contends, are exempt from the overtime provisions of the FLSA and NYLL.

There are three named plaintiffs and two proposed opt-in plaintiffs; each makes allegations relating to their particular overtime claim.  Plaintiffs David Dalton and Yovani Broadus worked as an executive assistant and a marketing manager, respectively, at GEM Financial Services.  Dalton worked at GEM from March 2014 until September 2015, while Broadus was employed from March 2013 until May 2015.  Both provide allegations of particular instances where they and other employees worked more than the required 40-hour work week, but were only paid for the standard 40 hours.

Plaintiff Johnson was an accountant and alleges that he was asked to falsify time records, deduct pay from employees classified as "exempt," and continually not paid the proper amount.  Proposed opt-in plaintiff Toussaint was a human resources administrator who directly visited GEM pawn shops, fielded overtime-related complaints from various employees, and observed an allegedly routine practice of rounding-down clock hours.

## DISCUSSION

### I. Conditional Certification Standard

Under the FLSA, an employee may bring a collective action on behalf of himself and others "similarly situated" provided that any employee wishing to join the action gives written

2

consent to the court.  29 U.S.C. § 216(b).  The Second Circuit has recognized that district courts have discretion to authorize the distribution of notice to any potential plaintiffs to inform them of their right to opt-in to the collective action.  See Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).

Certification of a collective action is analyzed under a two-step process.  See Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95 (E.D.N.Y. 2014).  At the first step, "conditional certification," generally takes place before any significant discovery.  This preliminary determination is often based on pleadings, affidavits, and declarations submitted by the party seeking conditional certification.  See Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 58 (E.D.N.Y. 2011).  At this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."  Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); see also Romero v. La Revise Assoc., L.L.C., 968 F. Supp. 2d 639 (S.D.N.Y. 2013).

The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court.  See Puglisi, 998 F. Supp. 2d at 99.  The form and provisions of a court-authorized collective action notice "are left to the broad discretion of the trial court."  Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007).

At the second step, after discovery, the court employs a much more stringent analysis to decide if plaintiffs are similarly situated.  The court will "examine the record and again make factual findings regarding the similarly situated requirement"; "[i]f the claimants are similarly situated, the collective action proceeds to trial," but "if they are not, the class is decertified, the

claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative[s] may proceed on [their] own claims." Kalloo v. Unlimited Mech. Co. of NY, Inc., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012).

## II. Analysis

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Prizmic v. Armour, In., No. 05 Civ. 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). However, "[n]either the FLSA nor its implementing regulations define the term 'similarly situated.' Thus, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Plaintiffs face a low standard of proof at this stage. See Myers, 624 F. 3d at 555.

### A. Specificity of Proposed Class

Courts in this Circuit have routinely allowed for conditional certification where plaintiffs proffer precise and detailed information outlining the alleged mistreatment suffered by other similarly situated employees as a result of defendants' compensation policies. See e.g. Iriarte v. Redwood Deli and Catering, Inc., No. 07 Civ. 5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008) ("although plaintiff has not identified any other employees who seek to opt in, this is not fatal in light of…the allegations plaintiff makes in his affidavit about observing fellow employees working overtime without proper compensation and the minimal burden required for certification as a collective action."); see also Hernandez v. Bare Burger Dio Inc., No. 12 Civ. 7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013).

The allegations set forth in plaintiffs' affirmations and declarations clearly satisfy the burden of specificity. Plaintiff Toussaint, a former GEM human resource administrator, specifically describes receiving complaints regarding denial of overtime compensation from nearly 80 different employees. In addition, plaintiff Johnson, a former GEM payroll clerk, describes continuous conversations with GEM executives regarding the routine denial of overtime payment to employees, purposeful misclassification of exempt-status, and being personally instructed to reduce clock records to inaccurately reflect that all employees worked no overtime. Moreover, Johnson, also like Toussaint, reported fielding numerous complaints regarding these issues from 60 to 70 GEM employees spanning every single title designation.

This type of consistent involvement in the day-to-day compensation realities of other GEM employees enabled plaintiffs to directly observe defendants' alleged wage-denial scheme, which eliminates the need to list specific individuals by name. See Iriarte, 2008 WL 2622929, at *3. The ability of plaintiffs to specifically identify the exact positions of similarly situated employees and detail their compensation arrangements exceeds the "modest factual showing" necessary to establish a "policy or plan that violated the law." See Sbarro, 982 F. Supp. at 261.

Defendants argue that plaintiffs' declarations lack the requisite specificity required to make this "modest factual showing." Despite the weight of contrary authority, defendants contend that plaintiffs' failure to individually identify, by name, other employees who were allegedly subjected to the same overtime violations renders their allegations conclusory and baseless. See Fernandez v. On Time Ready Mix, Inc., No. 14 Civ. 4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014); Sobczak, 540 F. Supp. 2d at 354, 362.

However, the facts of the cases on which defendants rely are distinguishable. In Fernandez v. On Time Ready Mix, Inc., for example, this Court noted that, "[p]laintiff's

5


declaration alleges only that 'all of the drivers employed by the defendant' were subject to defendant's policies not to pay overtime compensation and that he learned these facts from conversations with some of those drivers." Id. at *2. By contrast, plaintiffs in the instant case do not simply base their allegations on conversations with other employees, but on their own continuous and systematic involvement in defendants' allegedly illegal scheme. This type of in-depth access ensures that plaintiffs' allegations are not accepted based on mere hearsay, but subjected to the type of factual scrutiny envisioned by this Court in Fernandez. All of the other cases upon which defendants rely are similarly factually distinguishable. See Feng v. Hampshire Times, No. 14 Civ. 7102, 2015 WL 1061973 (S.D.N.Y. March 11, 2015) (plaintiff was "unaware of any employees who receive overtime pay in the restaurant"); Gu v. T.C. Chikurin, Inc., No. 13 Civ. 2322, 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) (plaintiffs "fail[ed] to provide any factual detail about the other employees"); Bai v. Zhuo, No. 13 Civ. 5790, 2014 WL 5475395 (E.D.N.Y. Oct. 29, 2014) (many of the employees identified by plaintiff as similarly situated ceased working for defendants well before the earliest violation date while others were not employed by the appropriate defendants); Khan v. Airport Mgmt. Servs., LLC, No. 10 Civ. 7735, 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) (many of the allegedly "similarly situated employees" submitted affidavits expressly rejecting many of the plaintiff's allegations).

### B. Similarly Situated "Non-Exempt" Employees

In FLSA cases involving putative classes of non-exempt employees, courts throughout this Circuit have found employees to be similarly situated as long as they and the named plaintiffs were victims of "a common policy or plan that violated the law." Lynch v. United Serv. Auto. Assoc., 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007). At this early certification stage, courts routinely refrain from inquiring into the existence of similarities between covered

6

employees' job functions and duties, instead focusing on the degree to which potential opt-in plaintiffs experienced the negative effects of defendants' allegedly unlawful policy. See Schwerdtfeger v. Demarchelier Mgmt., Inc., No. 10 Civ. 7557, 2011 WL 2207517, at *4 (S.D.N.Y. June 6, 2011). The relative differences existing between non-exempt employees in terms of job function or work location are not dispositive in determining the appropriateness of initial class certification. See Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010).

Plaintiffs have met the similarity requirements for conditional certification as they relate to plaintiffs' proposed non-exempt class members. Plaintiffs provide detailed accounts of numerous conversations with various hourly GEM employees, across all different GEM locations, involving complaints and inquiries relating to their denial of overtime payment by defendants. These accounts include references to multiple conversations whereby the named plaintiffs were explicitly instructed to manipulate time logs in accordance with GEM's alleged policy to restrict compensation to a 40-hour work week, regardless of overtime worked. The fact that some of these potential opt-in plaintiffs worked at different locations and performed different job functions does not obscure the common scheme.

Defendants argue that plaintiffs have failed to establish the requisite similarity amongst the proposed non-exempt opt-in plaintiffs. Defendants stress that all named plaintiffs worked within GEM's corporate offices, and performed largely administrative tasks, while most other non-exempt employees were employed throughout GEM's many different retail locations and engaged in sales or security-related operations.

These arguments are unavailing, as they fail to recognize the relevant case law regarding stage one class certification under the FLSA. As previously noted, discrepancies in job

responsibilities and location between putative, non-exempt class members will not defeat conditional certification at this stage. Instead, plaintiffs must only show common victimization through defendants' illegal policy or plan to deny overtime wages.

### C. Similarly Situated "Exempt" Employees

In Myers, the Second Circuit observed that to certify a class involving employees classified as exempt, a plaintiff would have to meet a higher similarity burden. In such cases, the Court held that plaintiffs meet this burden "by making some showing that there are other employees ... who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." Myers, 624 F.3d at 555 (internal citations omitted). Thus, in order to establish the existence of a similarly situated collective action class, plaintiffs must show that such similarity exists amongst non-exempt and exempt employees alike before notice can be disseminated.

This approach makes sense because the employment-related differences existing between non-exempt and exempt employees are usually substantial. The former group consists of hourly employees performing generally unskilled, lower paying tasks, while the latter usually hold salaried, managerial positions requiring higher level skillsets. See 29 C.F.R. § 541.3(a)(1). Therefore, plaintiffs' allegations must be subjected to greater scrutiny to determine if they establish the existence of a truly similarly-situated class of employees.

Plaintiffs' proposed collective action class would be comprised of all defendants' hourly and salaried employees together – regardless of their job function, work location, or exemption status. Nowhere in plaintiffs' declarations or affidavits do they articulate the exempt employees' job requirements or pay provisions, nor do they articulate how such attributes render them

similarly situated to the non-exempt employees, or even each other. Such dissimilarity is analogous to Romero v. H.B. Automotive Group, Inc., No. 11 Civ. 386, 2012 WL 1514810, at *14 (S.D.N.Y. May 1, 2012), where the court determined that "putative opt-ins [were] not [in fact] similarly situated with respect to their job duties or exempt-status." As in Romero, plaintiffs have failed to meet the burden imposed by the Second Circuit in showing the requisite similarity necessary to conditionally certify such an all-inclusive collective action class.

Plaintiffs' argument that many such employees were illegally misclassified by defendants as "exempt," which would eliminate the need to establish a higher degree of similarity, is not persuasive. Plaintiffs contend that defendants' violated the "salary-basis test" – meaning that they classified certain employees as exempt, yet subjected them to punitive measures, like docking their pay for working less than 40 hours per week, which cannot be applied to exempt employees. See 29 C.F.R. § 541.602(a).

Nevertheless, even if defendants violated the salary-basis test and misclassified non-exempt employees as exempt, such actions are irrelevant to the similarity analysis dictated in Myers. Indeed, Myers itself involved an alleged misclassification of exempt employees. The Court nonetheless imposed a showing of similarity in terms of job requirements and pay provisions to ensure that plaintiffs' putative class was similarly situated. Plaintiffs' misclassification argument does not absolve them of their obligation to show that they are similarly situated to defendants' employees classified as exempt.

## III. Request for Contact Information

Plaintiffs request an order directing defendants to produce the names, last known addresses, telephone numbers, e-mail addresses, and dates of employment of all GEM employees. Defendants, however, argue that such an order, specifically one which requires

9

telephone numbers and dates of employment, is unnecessary and violates the privacy rights of their employees. Defendants therefore maintain that, if such an order is granted, it should only include names, last known addresses, and known e-mail addresses.

Courts in this Circuit have routinely granted such discovery requests. See, e.g., Puglisi, 998 F. Supp. 2d at 102 (collecting cases).[1] Defendants' reference to vague privacy concerns is insufficient to overcome the need for such discovery in the collective action context, except as to one aspect – telephone numbers. Although there are cases going both ways on this issue, see Hernandez v. Immortal Rise, Inc., No. 11 Civ. 4360, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012) (noting conflict), I believe that the better reasoned view is that plaintiffs who choose not to respond to the written notice that will be sent to them by regular mail or email or both should not have to face additional solicitation efforts by telephone. Most consumers get more than enough unwanted telephone solicitations, and once a plaintiff elects not to participate in a collective action despite having received notice, courts should not facilitate more unsolicited approaches. In addition, as explained below, the written notice will be carefully constructed to balance the need for full disclosure against the possibility of either undue encouragement or discouragement from participating, and oral solicitations raise the possibility that the notice will be undermined. The Court will not, and could not, prevent plaintiffs from attempting to encourage participation in the case through any lawful means, but the Court, beyond approving the written notice, should not become a party to those efforts.

**IV.    Proposed Notice to Potential Opt-In Plaintiffs**

Defendants have objected to the inclusion or omission of particular language in plaintiffs' proposed notice, and plaintiffs' have requested that the court afford the parties an opportunity to

---

[1] The one case defendants cite to the contrary, Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007), is an outlier and I do not find it persuasive. In any event, it focused primarily on disclosure of social security numbers, which plaintiffs do not seek here.

10

confer and submit a jointly acceptable form of notice. This Court has issued a number of FLSA decisions setting forth what needs to be in a notice and what should not be in a notice. The parties are directed to meet and confer after reviewing these decisions and submit an agreed upon notice within 14 days.

## **CONCLUSION**

Plaintiffs' motion for conditional certification as a FLSA collective action, pursuant to 216(b) of the FLSA, court authorized notice, and production by defendants of potential plaintiffs' contact information, is granted in part and denied in part.

U.S.D.J.

Dated: Brooklyn, New York
       July 6, 2016